UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————x
:
TONIA BUSH,                                          :
:
Plaintiff,                      :          06 Civ. 5529 (PKC)
:
-against-                           :
:
MITCHELL J. DANZIGER, AURORA DE PENA, :
"John Doe", NEW YORK CITY HOUSING        :          MEMORANDUM
AUTHORITY, MONIQUE NAZARIO,              :          AND
RITA RIZZO, HOWARD FRITZ, "John Doe",    :          ORDER
KRAUSE MANAGEMENT INC., JOHN             :
VILLANUEVA, "John Doe", MUDANZA a/k/a    :
"John Doe", MIDTOWN MOVING & STORAGE, :
INC.,                                                :
:
Defendants.                     :
:
———————————————————————————x

P. KEVIN CASTEL, U.S.D.J.

  This is an action by plaintiff Tonia Bush, proceeding <u>pro se</u>, against

Mitchell J. Danziger, the judge who presided over a non-payment proceeding against

plaintiff in New York City Housing Court, Bronx County.  Also named as defendants are

the New York City Housing Authority ("NYCHA"), Kraus Management Inc. ("Kraus"),

who manages the building in which plaintiff resided, as well as four employees of Kraus,

Aurora De Pena, Monique Nazario, Howard Fritz and Rita Rizzo.[1]  A moving company,

Midtown Moving & Storage, Inc. ("Midtown Moving"), and one of its employees

identified as "John Doe" Mudanza, and a city Marshal, John Villanueva, are also named.

  Judge Danziger, Ms. De Pena, Mr. Villanueva, and the president of

Midtown Moving have been the target of liens filed by plaintiff with the New York

---

[1] Kraus is misspelled with an "e" in the caption.

Department of State pursuant to the Uniform Commercial Code ("U.C.C.").  Plaintiff has also attempted, albeit unsuccessfully, to file at additional liens against Rizzo, Nazario, and Fritz, as well as the attorneys representing defendants Danziger, Villanueva, and Midtown Moving.  (Prelim. Inj. Hrg. Def. Ex. A; Connell Decl. Exs. B, H; Gogel Decl. Ex. C)  The purported basis for these liens is that the defendants and their attorneys have used her name without authorization, and in violation of her common-law copyright. (E.g., Gogel Decl. Ex. C)  There appears to be no way for a targeted "debtor" to purge the public record of the lien.  While other documents can be filed reflecting the termination of the lien, the original lien remains on file and viewable.  See http://appsext4.dos.state.ny.us/pls/ucc_public/web_search.main_frame (searchable database for U.C.C. liens filed in New York).

On August 16, 2006, the district court judge sitting in Part I signed a temporary restraining order against plaintiff barring her from filing such liens.  On August 29, 2006, I held a hearing on defendant's motion for a preliminary injunction at which plaintiff was present and given the opportunity to be heard.  I granted the motion for a preliminary injunction, and that injunction, with some modifications, remains in effect.  Since the grant of the preliminary injunction, it appears that plaintiff has made two new attempts to file liens.  (Gogel Decl. Exs. C, D)


The Complaint

Plaintiff is a former resident of New York City public housing in the Bronx, New York.  (Compl. ¶¶ 14-16)  In March 2005, plaintiff alleges that she was terminated from her position of employment with Fordham University, at which time she

contacted defendant Kraus, a managing agent for defendant NYCHA, in order to receive a rent reduction to which she claims a contractual entitlement under the terms of her lease.  (Compl. ¶¶ 27-35)  As a result of Kraus's failure to reduce her rent, plaintiff accumulated rent arrearages, and sometime in 2005, the NYCHA commenced a non-payment proceeding against plaintiff in a Bronx Housing Court, seeking possession of plaintiff's apartment and payment of past rent.  (Compl. ¶¶ 37-40)  Defendant Danziger presided over the trial in that proceeding, and on March 27, 2006, entered a decision granting the NYCHA possession of plaintiff's apartment and rent due, totaling $4,455.00. (Compl. ¶ 52); NYCHA v. Bush, No. 5339-05 (N.Y. Civ. Ct., Bronx County 2006) (order granting final judgment in favor of NYCHA).[2]

In June of 2006, plaintiff received correspondence from defendant Monique Nazario, a resident manager for Kraus, regarding the scheduling of the eviction pursuant to the Housing Court judgment.  (Compl. ¶ 55)  On or about June 22, 2006, defendant Villanueva, a city Marshal, effectuated the eviction by changing plaintiff's locks and affixing a notice to her door.  (Compl. ¶ 58)  On or about June 23, 2006, defendant Midtown Moving moved plaintiff's property out of her former residence, and placed it into storage.  (Compl. ¶¶ 63-65)  It appears that plaintiff objected to the eviction, and entered into discussions regarding its legality with defendant De Pena, a collections manager for the NYCHA.  (Compl. ¶¶ 75-79)

While plaintiff has not filed an appeal from the Housing Court judgment in the New York State Courts, on July 21, 2006 plaintiff commenced this action.

---

[2] Defendant Danziger's attorney has submitted a declaration which states that defendant Danziger is a judge of the Civil Court of the City of New York, Bronx County, who sits in the Housing Court, Bronx County. (Connell Decl. ¶ 1)  It is not clear whether defendant Danziger was a Civil Court Judge or a Housing Judge at the time of the proceeding between the NYCHA and plaintiff.  However, the distinction between the two under New York State law is immaterial to the issues before me.

Defendants Rizzo and Fritz are attorneys for Kraus.  (Compl. ¶¶ 8-9)  "Mudanza a/k/a 'John Doe'" appears to be an employee of Midtown Moving.  (Compl. ¶ 12)  The other "John Doe" defendants appear to be employees of the NYCHA and Kraus.  (Compl. ¶¶ 5, 7)

Plaintiff's complaint does not specify a basis for this court's subject matter jurisdiction, but plaintiff cites to several federal constitutional provisions and the United States Housing Act of 1937 in an effort to establish a claim that the alleged breach of her lease agreement was unlawful under federal law.  (Compl. ¶¶ 4-10, 35, 105-06)  Plaintiff also alleges a breach of the lease agreement under state law.  (Compl. ¶¶ 28-42)  In addition, several portions of the complaint appear to allege that various defendants engaged in unlawful self-help evictions.  (E.g., Compl. ¶ 69)  Plaintiff also generally avers that unspecified defendants committed extortion and burglary (Compl. ¶¶ 109-10), and that defendants De Pena, NYCHA, Nazario, Rizzo, Fritz and Kraus attempted to "coerce plaintiff into committing fraud when they instructed plaintiff to apply for welfare funds."  (Compl. ¶¶ 43-44)  Throughout the complaint, plaintiff cites to several Supreme Court and Court of Appeals decisions, many of which have no obvious relevance to plaintiff's claims.

Plaintiff alleges her federal constitutional claims against defendant Danziger as follows: (1) that her trial in Housing Court violated due process because the "[r]ight to a fair trial is a basic requirement of due process and includes [the] right of [an] unbiased judge," (Compl. ¶ 45); (2) that her First Amendment freedoms were somehow interfered with by her denial of a jury trial, and that the denial of a jury trial was otherwise unconstitutional, (Compl. ¶¶ 46-47); (3) that the proceedings were infected by

perjury known to the NYCHA, (Compl. ¶ 48); (4) that defendant refused to enforce agreements between the plaintiff and the NYCHA that allegedly existed, (Compl. ¶ 49); (5) that defendant's use of stipulations at trial breached an unspecified duty, (Compl. ¶¶ 50-51); (6) that the trial on a partly stipulated record violated due process, and that the resultant decision thereby violated due process, (Compl. ¶¶ 51-52); and, (7) that the defendant's monetary award in favor of the NYCHA was fraudulent. (Compl. ¶ 53) Plaintiff seeks declaratory judgment against all defendants plus "any relief th[e] court finds to be just and proper." (Compl. ¶ 53)

Defendant Danziger has moved to dismiss and/or for summary judgment on all of plaintiff's claims pursuant to Rules 12(b)(1), 12(b)(6), and 56, Fed. R. Civ. P., and served plaintiff with the requisite Notice to Pro Se Litigant Opposing Motion pursuant to Local Rules 12.1 and 56.2. Defendant Danziger advances several grounds for a judgment in his favor, including the Eleventh Amendment, Rooker-Feldman doctrine, Younger abstention doctrine, claim and issue preclusion, absolute judicial immunity, and failure to state a claim for relief. Defendant Danziger also seeks a permanent injunction against plaintiff's practice of filing false security agreements and U.C.C. liens against defendants and others.

As explained more fully below, defendant Danziger's motion to dismiss is granted on the grounds that this court lacks subject matter jurisdiction over all of plaintiff's claims against him under the Rooker-Feldman doctrine. I also dismiss, sua sponte, plaintiff's claims against defendants Villanueva, De Pena, Nazario, Midtown Moving, Kraus, the NYCHA, and the John Doe defendants to the extent that plaintiff's claims allege injuries arising from defendants' enforcement of the Housing Court

judgment, as those claims are also barred under the Rooker-Feldman doctrine.  With the
exception of plaintiff's state law breach of contract claim against the NYCHA and Kraus,
the balance of plaintiff's claims are dismissed without prejudice for failure to comply
with Rule 8 and, in the case of the fraud-based claims, Rule 9(b), Fed. R. Civ. P.  The one
intelligible claim that plaintiff has raised—the breach of contract against her landlords—
is dismissed for lack of subject matter jurisdiction because I decline to exercise
supplemental jurisdiction.


Rooker Feldman

            "The Rooker-Feldman doctrine prevents the lower federal courts from
exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court
judgments rendered before the district court proceedings commenced.'"  Lance v. Dennis,
__ U.S. __, 126 S. Ct. 1198, 1199 (2006) (per curiam) (quoting Exxon Mobil Corp. v.
Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)); see also Hoblock v. Albany County
Bd. of Elecs., 422 F.3d 77, 85 (2d Cir. 2005) (same).  "[T]here are four requirements for
the application of Rooker-Feldman.  First, the federal-court plaintiff must have lost in
state court.  Second, the plaintiff must 'complain[] of injuries caused by [a] state-court
judgment[.]'  Third, the plaintiff must 'invit[e] district court review and rejection of [that]
judgment[].'  Fourth, the state-court judgment must have been 'rendered before the
district court proceedings commenced' . . . ."  Hoblock, 422 F.3d at 85 (alterations in
original) (quoting Exxon Mobil, 544 U.S. 280)).  These four requirements are all met as
to plaintiff's claims against defendants for their roles in entering and enforcing the
Housing Court judgment.

The first requirement is straightforward and met under the facts of plaintiff's case.  Plaintiff, appearing as respondent in the underlying action in the Housing Court, lost in the state forum.  The presiding judge, defendant Danziger, entered an order on March 27, 2006, in which he granted full relief to the NYCHA.  Thus, plaintiff is a "state-court loser" within the meaning of the Rooker-Feldman doctrine, and the doctrine may be asserted against her.  See Lance, 126 S. Ct. at 1199, 1202.[3]

The second requirement—that the plaintiff complain of an injury caused by a state judgment—"is the core requirement from which the others derive," and "explains why a federal plaintiff cannot escape the Rooker-Feldman bar simply by relying on a legal theory not raised in state court."  Hoblock, 422 F.3d at 87.  The Second Circuit offered an instructive hypothetical to assist lower courts in understanding the operation of this principle: "Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son.  If the father sues in federal court for the return of his son on the grounds that the state judgment violates his federal substantive due process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal."  Id. at 87.  A related principle holds that "federal suits that purport to complain of injury by individuals [but] in reality complain of injury by state-court judgments" may also be barred.  Id. at 88.  This scenario arises when

---

[3] In Hoblock, the Second Circuit stated that the "the parties in the state and federal action must be the same," and that there must be a "common identity between the state and federal plaintiffs."  Hoblock, 422 F.3d at 89.  In this case, plaintiff was a respondent in the underlying state-court action, but most of these defendants were not parties to that action.  While the Supreme Court has held that Rooker-Feldman may not be asserted against a non-party to the underlying state-court proceeding, see Lance, 126 S. Ct. at 1201, the Court has not held that there must be complete identity of plaintiffs or parties in the two proceedings.  At least one district court has dismissed on Rooker-Feldman grounds without complete identity of plaintiffs or parties.  See Coleman v. Pataki, 358 F. Supp. 2d 185 (W.D.N.Y. 2004), aff'd, 170 Fed. Appx. 145 (2d Cir. 2006), cert. denied, __ U.S. __, 2006 WL 1523436 (Oct. 2, 2006) (enforcing Rooker-Feldman doctrine when a defendant in a state court proceeding subsequently sued a non-party in federal court).  I do not read Hoblock as holding that the application of the doctrine is foreclosed in the absence of complete identity of the parties.

a federal plaintiff refrains from complaining about the state-court judgment on its own terms, but instead complains of actions taken by third parties who carry out the state-court judgment.  The <u>Rooker</u>-<u>Feldman</u> bar cannot be avoided so easily; thus, "[i]n the child custody example . . ., if the state has taken custody of a child pursuant to a state judgment, the parent cannot escape <u>Rooker</u>-<u>Feldman</u> simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child."  <u>Id.</u>

In <u>Hoblock</u>, the Second Circuit offered a test for determining whether the actions of a third party are "caused by" a state judgment: "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.  Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state-court judgments that only the Supreme Court can hear."  <u>Hoblock</u>, 422 F.3d at 88.  Such was the case in <u>Hoblock</u>, where the plaintiffs in federal court complained of injuries caused by an election board—a third party—when the board refused to count certain ballots in order to comply with a state-court judgment.  <u>Id.</u> at 88-89.  The Second Circuit held that since the offending action was caused by the state-court judgment, the federal district court lacked jurisdiction to hear the claims against the board.  <u>Id.</u> at 89.

In this case, all of the claims against defendant Danziger are, in substance, claims of injuries caused by the Housing Court judgment.  Plaintiff, like the hypothetical child-custody complainant, lost a case in state court on state law grounds, and followed

that judgment with a suit in federal court on the grounds that the state judgment violates, inter alia, due process.  All of the allegedly wrongful conduct on the part of defendant Danziger arose in connection with his determinations in the course of the trial and at the conclusion of the trial in the Housing Court.  The fact that plaintiff's theories are different from those asserted in the underlying state court proceeding, and the fact that plaintiff identifies Judge Danziger, and not the judgment qua judgment, as the source of her injury, does not alter the conclusion.  Thus, the second requirement for Rooker-Feldman dismissal is met with regard to her claims against defendant Danziger.

Similarly, with respect to defendants Villanueva, De Pena, Nazario, Midtown Moving, Kraus, the NYCHA, and other employees of those entities, while plaintiff's legal theories are not clear, it is apparent that most if not all of the injuries plaintiff complains of at the hands of these defendants were "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it."  Hoblock, 422 F.3d at 88.  The state-court judgment, which was entered on March 27, 2006, authorized plaintiff's eviction.  The various defendants listed above took actions to effectuate the judgment granting possession to the NYCHA.  Therefore, as in Hoblock and the child-custody hypothetical, to the extent that the defendants were acting pursuant to the judgment authorizing eviction, plaintiff's injuries were produced by a state-court judgment.

Satisfaction of the third prong—which looks to whether the "federal plaintiff . . . seek[s] federal-court review and rejection of the state-court judgment," Hoblock, 422 F.3d at 85—does not require that the federal plaintiff expressly state that she is seeking "review."  Nor is it necessary that a federal plaintiff rely on the legal

theories presented in the state court, in order to be ousted in the federal court.  Id. at 86-87.  Prohibited relitigation occurs when a "federal claim, whether or not raised in state court, . . . asserts injury based on a state judgment and seeks review and reversal of that judgment[.  S]uch a claim is 'inextricably intertwined' with the state judgment."  Id. at 87-88.

Plaintiff asks this Court to pass on several determinations made by defendant Danziger during the Housing Court proceedings, as well as scrutinize the final judgment in favor of the NYCHA.  Plaintiff also seeks a judgment declaring that the actions by third parties who implemented the Housing Court judgment were unlawful.  Plaintiff's claims, although invoking the U.S. constitution and asserting fraud, are "inextricably intertwined' with the state-court judgment.  Plaintiff cannot prevail against defendant Danziger or the defendants who enforced his judgment without having this court reject and reverse the decisions of a state-court Housing Judge.[4]  Therefore, the third prerequisite to the application of the doctrine is met.

The fourth and final prerequisite to the application of the Rooker-Feldman doctrine is a timing requirement: "the state-court judgment must have been 'rendered before the district court proceedings commenced.'"  Id. at 85 (quoting Exxon Mobil, 544 U.S. at 283).  Here, the Housing Court judgment was entered and filed on March 27, 2006; that is the date on which the underlying state-court judgment was rendered for the purposes of Rooker-Feldman.  See Hoblock, 422 F.3d at 89 (noting that only "federal suits challenging interlocutory state judgments . . . present difficult questions as to whether the state proceedings have ended within the meaning of Rooker-Feldman"

---

[4] While not a basis for my decision, I note that plaintiff was very forthright at the preliminary injunction hearing that the ultimate relief she seeks in this suit is to be returned to her former residence because she disagrees with Judge Danziger's ruling in the Housing Court.  (Tr. 8/29/06, at pp. 27-31)

(internal quotations omitted)); see also Galtieri v. Kelly, 441 F. Supp. 2d 447, 458 n.9 (E.D.N.Y. 2006) (applying Rooker-Feldman when the underlying state judgment was rendered prior to the commencement of the federal suit, even though the state-court appeal from the underlying judgment had not yet become final).  In a letter dated October 13, 2006, counsel for defendant Danziger has acknowledged that plaintiff's time to appeal in state court has not yet expired (because notice of entry had not been served until recently).  However, this does not affect the Rooker-Feldman analysis, since the underlying Housing Court judgment from which plaintiff seeks relief was rendered on March 27, 2006.  By the time plaintiff filed the instant complaint on July 21, 2006, the state judgment was final for Rooker-Feldman purposes.

The Rooker-Feldman doctrine bars the exercise of subject matter jurisdiction over all of plaintiff's claims against defendant Danziger.[5]  Also dismissed under Rooker-Feldman are plaintiff's claims against defendants Villanueva, De Pena, Nazario, Midtown Moving, Kraus, NYCHA, and the employees of those entities, to the extent they seek to challenge the enforcement of the underlying state-court judgment.  As will be seen, the manner in which plaintiff's claims are drafted makes the precise delineation of such claims difficult.  At a minimum, plaintiff's claims that she was harmed when (1) defendant Villanueva changed the locks and affixed a notice of eviction to plaintiff's door (Compl. ¶¶ 58-59), (2) defendant Midtown Moving and its employees removed plaintiff's personal effects from her former residence (Compl. ¶¶ 63-65), and (3) defendants De Pena, Nazario, Kraus, NYCHA, and other Kraus employees took steps to

---

[5] Because I have dismissed all claims against defendant Danziger under Rooker-Feldman, I need not address absolute judicial immunity, or the other defenses raised.

enforce the lawful judgment granting possession to NYCHA, are barred. (Compl. ¶¶ 54-55, 75-78, 83)

Rule 8 and Rule 9(b), Fed. R. Civ. P.

As noted, the <u>Rooker</u>-<u>Feldman</u> doctrine does not address all of the claims that plaintiff has attempted to raise in her complaint.  For instance, plaintiff's claims that the NYCHA and Kraus acted unlawfully in refusing to reduce her rent and in subsequently seeking her eviction are not barred by <u>Rooker</u>-<u>Feldman</u>, because those injuries pre-date, and hence were not "caused by," the state judgment.  Similarly, claims that any of the defendants engaged in <u>ultra</u> <u>vires</u> acts in the course of enforcing the judgment (Compl. ¶¶ 61, 68, 80-82, 84-86) are not barred by <u>Rooker</u>-<u>Feldman</u>, because such acts are independent of the underlying judgment.

Civil complaints filed in federal court must conform to requirements set forth in Rule 8 of the Federal Rules of Civil Procedure.  These requirements include an instruction that claims for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8(e)(1) further requires that "[e]ach averment of a pleading shall be simple, concise, and direct."  Fed. R. Civ. P. 8(e)(1).  While the pleading requirements under Rule 8 are generally quite liberal, requiring only that a complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 512 (2002) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); <u>see</u> <u>also</u> <u>Green v. United States</u>, 260 F.3d 78, 83 (2d Cir. 2001) (<u>pro</u> <u>se</u> pleadings are given especially liberal construction, and are read to "raise the strongest arguments

they suggest" (quoting <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996))), the Second

Circuit recently noted that Rule 8 "stop[s] well short of saying that Plaintiffs bear no

burden at the pleading stage." <u>Amron v. Morgan Stanley Inv. Advisors Inc.</u>, __ F.3d __,

Nos. 04-3938-CV(L), 04-3940(CV)(CON), 2006 WL 2734306 (2d Cir. Sept. 26, 2006).[6]

The requirements that pleadings be short, plain, and concise play an important role in the

orderly conduct of federal litigation, because "unnecessary prolixity in a pleading places

an unjustified burden on the court and the party who must respond to it because they are

forced to select the relevant material from a mass of verbiage." <u>Salahuddin v. Cuomo</u>,

861 F.2d 40, 42 (2d Cir.1988).  Therefore, when faced with a complaint that fails to

comply with the Rules, the district court "has the power, on its own initiative or in

response to a motion by the defendant, to strike any portions that are redundant or

immaterial, or to dismiss the complaint." <u>Id.</u> (internal citation omitted); <u>see</u> <u>also</u>

<u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86 (2d Cir. 1995).

  Plaintiff's 115 paragraph Complaint is filled with conclusory statements of

unlawful activity that are unsupported by any allegations of facts.  For instance, in

paragraphs four through ten of the complaint, plaintiff identifies the defendants

associated with Kraus and the NYCHA, and each identifying paragraph concludes with

the following text: "The U.S. Housing Act of 1937, 42 U.S.C. § 1437 et seq; Public

Housing Law (statutes); 24 CFR Parts 912-999; and 9 NYCRR § 1627 ET SEQ.

(regulations) violates plaintiff Bush's rights under the 14th Amendment of the U.S.

---

[6] It is noted that while plaintiff is a <u>pro se</u>, she is no stranger to federal court, having brought three other suits in this district in the past 3 years.  <u>See</u> <u>Bush v. Fordham Univ.</u>, No. 04-cv-01847(RJH), 2006 WL 2720616 (S.D.N.Y. Sept. 25, 2006) (dismissing plaintiff's Title VII claims against Fordham University); <u>Bush v. O.P.E.I.U. Local 153 Union</u>, No. 05-cv-7012(RJH) (open); <u>Bush v. Danziger</u>, No. 06-cv-6934(KMW) (S.D.N.Y. Sept. 11, 2006) (order of dismissal on the grounds that complaint raises no new allegations).

Constitution and Article I of the New York State Constitution."  (Compl. ¶¶ 4-10)  It is simply impossible to decipher what plaintiff means by these references, or which acts by the named defendants constitute constitutional or statutory violations.  Similarly, plaintiff alleges that she "has been damaged in that her name has been dishonored" (Compl. ¶ 102), and "in that her honor has been diminished" (Compl. ¶ 103), and alleges that these are interests protected by the due process clause, but fails to state which defendants are responsible for her degradation, or what conduct caused this injury.  Averments of this sort plainly fail to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  <u>Swierkiewicz</u>, 534 U.S. at 512.

Plaintiff's other claims are similarly infirm.  Plaintiff has alleged that virtually everyone involved with the execution of her eviction in June 2006 has acted unlawfully because "[a] landlord may not take the law into his/her own hands and evict a tenant . . . ."  (Compl. ¶¶ 58, 59, 69, 75)  However, plaintiff does not dispute that a judgment for possession in favor of the NYCHA was granted in the Housing Court on March 27, 2006, and so it is not clear how the implementation of that judgment by a city Marshal, defendant Villanueva, and others was an unlawful self-help eviction.  Plaintiff also alleges in conclusory fashion that "defendants have committed extortion," as well as "burglary."  (Compl. ¶¶ 109-10)  These allegations are not tied to any particular defendants or any particular conduct, such that the individual defendants would have sufficient notice of the claims against them.  These claims are therefore insufficient under Rule 8.

Plaintiff also alleges that defendants De Pena, NYCHA, Nazario, Rizzo, Fritz, and Kraus "tried to coerce plaintiff into committing fraud when they instructed

plaintiff to apply for welfare funds."  (Compl. ¶ 43)  Plaintiff later avers that "[b]y reason

of the facts and circumstances stated above, defendants have committed fraud."  (Compl.

¶ 108)  These fraud-based claims are unsupported by sufficient factual allegations to

comply with Rule 8, much less the more stringent requirements for pleading fraud under

Rule 9(b), Fed. R. Civ. P., which requires that "the circumstances constituting fraud . . .

shall be stated with particularity."

   For these reasons, all of plaintiff's remaining claims, with the exception of

her breach of contract claims, are dismissed for failure to comply with Rules 8 and 9(b).

Plaintiff may move for leave to replead within ten days hereof, annexing the proposed

amended complaint.


Supplemental Jurisdiction

   There is no independent basis for federal jurisdiction over plaintiff's

breach of contract claim.  The Complaint alleges New York as the residence of all

defendants and of the plaintiff, and so there is no diversity under 28 U.S.C. § 1332.

Plaintiff attempts to invoke federal question jurisdiction over her breach of contract claim

on the grounds that the breach violates the Contract Clause of the constitution, U.S.

Const. art. I, § 10.  (Compl. ¶¶ 105-07)  However, the Contract Clause does not protect

against breaches of contracts by individuals, even those committed by state employees:

"The prohibition [of the Contract Clause] is aimed at the legislative power of the State,

and not the decisions of its courts, or the acts of administrative or executive boards or

officers, or the doings of corporations or individuals."  Kinney v. Connecticut Judicial

Dept., 974 F.2d 313, 314 (2d Cir. 1992) (alteration in original) (quoting New Orleans

Water-Works Co. v. Louisiana Sugar Refining Co., 125 U.S. 18 (1888)).  Plaintiff has not alleged that any legislative acts of the State of New York or its subdivisions have interfered with her contract, and thus she fails to state a claim under the Contract Clause.

Plaintiff also alleges that the breach denied her equal protection of the laws.  (Compl. ¶ 35)  The basis for her claim is that in 1995, plaintiff received a rent reduction from her landlords.  She asserts that because she did not receive a rent reduction in 2005, she was the victim of disparate treatment.  (Compl. ¶ 35)  There is no allegation that any other person received more favorable treatment, or that the denial of a reduction in 2005 was discriminatory.  Plaintiff plainly fails to allege a colorable equal protection claim.

The breach of contract claim against Kraus and the NYCHA, although initially before this Court under supplemental jurisdiction, 28 U.S.C. § 1367(a), must now be dismissed.  Under 28 U.S.C. § 1367(c), a district court may decline to exercise jurisdiction over supplemental claims when, inter alia, "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The Second Circuit has explained that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).  The instant case is one such "usual case," and so the Court will decline to exercise jurisdiction over plaintiff's breach of contract claim.

Martin-Trigona Injunction

District courts have both statutory and inherent powers to issue injunctions against abusive litigants.  See In re Martin-Trigona, 737 F.2d 1254, 1261 (2d Cir. 1984) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."); 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions . . . .").  The Second Circuit has explained that vexatious litigation poses a significant threat to the exercise of the essential constitutional functions of the courts: "Were litigants free to resort to [such] tactics with impunity, the results would be potentially to render many federal laws . . . enforceable only at great cost, to chill litigants from seeking relief to which they are entitled, to deter counsel from representation in cases involving malicious and litigious parties, to make it more difficult to recruit personnel for all positions in the judicial branch, and, finally, to bring the entire system of justice to a halt, thus depriving all other litigants of their right to an expeditious adjudication of good faith federal claims."  Martin-Trigona, 737 F.2d at 1261-62.  In confronting a threat, the Court "need not await the arrival of a litigant able to show a private entitlement to relief."  Id. at 1262.  Thus, when exercising the inherent power to curb abuse in the litigation process, the usual standards for injunctive relief do not apply; rather, the court need only find "[a] history of litigation entailing vexation, harassment and needless expense to other parties, and an unnecessary burden on the courts and their supporting personnel."  Id. (internal quotations and citations omitted).  While these standards were crafted to address the commencement of abusive lawsuits, the Second

Circuit contemplated that district courts may need to adapt such protective injunctions "to keep pace with [litigants'] imaginative pursuit of new methods of harassment." Id. at 1263.

In making the determination as to whether a filing injunction is warranted, there are five factors which must be considered: "(1) the litigant's history of litigation and in particular whether it entailed vexations, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation . . .; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties." Safir v. United States Lines Inc., 792 F.2d 19, 24 (2d Cir. 1986). In addition, before an injunction can issue, the litigant must receive notice and an opportunity to respond. Moates v. Barkley, 147 F.3d 207, 208 (2d Cir. 1998).

Plaintiff's practice of filing bogus U.C.C. liens is part of a pattern of conduct that threatens the proper function and exercise of the jurisdiction of the district court. While her tactics are baseless and abusive, they are unfortunately not novel. See, e.g., United States v. Orrego, No. 04-CV-0008(SJ), 2004 WL 367706 (E.D.N.Y. Feb. 23, 2004) (liens filed for unauthorized use of purportedly copyrighted name); see also United States v. Martin, 356 F. Supp. 2d 621 (W.D. Va. 2005); United States v. Speight, No. 00-CV-1791(SRU), 2001 WL 539610 (D. Conn. May 17, 2001). The record reveals that sometime in June 2006, prior to the commencement of this suit, plaintiff filed false security agreements and liens against defendants Danziger, De Pena, and Villanueva, and

attempted to file liens against defendants Rizzo, Fritz, and Nazario.  (Connell Decl. Ex. B)

Plaintiff filed her complaint in this action against those defendants and others on July 21, 2006.  On August 16, 2006 defendant Danziger appeared ex parte before the district court judge sitting in Part I and obtained a temporary restraining order enjoining plaintiff from filing more liens.  The Part I judge's Order set August 29, 2006 as the return date on the motion for a preliminary injunction, and required service upon the plaintiff.  Defendant Danziger's counsel, Assistant Attorney General Monica Connell, served plaintiff with the Order by registered mail on August 17, 2006.  (Connell Decl. ¶ 15)  On August 28, Ms. Connell received a false security agreement from plaintiff, mailed by plaintiff on August 23, that purported to create a lien against the attorney for unauthorized uses of plaintiff's name in connection with the order to show cause and temporary restraining order.  (Connell Decl. ¶ 16, Ex. E; Tr. 8/29/06 at p. 13)  On August 29, 2006, I held a hearing on the motion for a preliminary injunction, at which plaintiff appeared and argued on her own behalf.[7]  At the hearing, plaintiff acknowledged on the record that she received the order from the Part I judge.  (Tr. 8/29/06 at pp. 18, 24)  I further explained that her appearance in court was for her to be heard in opposition to defendant's motion.  (Tr. 8/29/06 at p. 24)  She spoke on her own behalf at the hearing,

---

[7] Plaintiff was present at the hearing and identified herself as the plaintiff, but refused to use her own name:
      THE COURT: Will the person in the back of the courtroom please identify themselves.
      MS. BUSH: I'm a secured party.
    . . . .
      THE COURT: . . . .  What is your name?
      MS. BUSH: Secured party.
      THE COURT: Your name is secured party?
      MS. BUSH: Secured party.
      THE COURT: Are you the plaintiff in this action?
      MS. BUSH: Yes.
(Tr. 8/29/06 at p. 2)

and did not deny that she filed the liens and mailed the agreements, and persisted in referring to herself as the "secured party."  (See Tr. 8/29/06 at pp. 2-10)  At the hearing, defendant Danziger's counsel persuasively argued based upon the Declaration of Ms. Connell with exhibits, that plaintiff's liens and related contracts had no legal or factual basis, and that there was no merit to her claimed copyright in her name.  (Tr. 8/29/06 at pp. 10-15)  I granted the preliminary injunction.  Plaintiff's subsequent submissions to the Court, including her opposition to Judge Danziger's motion to dismiss and for an injunction, have failed to cure the inadequacy in plaintiff's presentation at the hearing. (See Letter of 10/17/06; Docket No. 36)

        The order granting the preliminary injunction which was delivered to plaintiff on the record in open court (Tr. 8/29/06 at p.31), did not result in a cessation of plaintiff's lien filing activity.  In September, plaintiff filed a lien against the president of defendant Midtown Moving, and it appears that plaintiff attempted to file liens and has mailed fraudulent security agreements to the attorneys for defendants Villanueva and Midtown Moving.  (Connell Decl. Ex. H; Gogel Decl. ¶ 7, Exs. C, D)  This activity supports the conclusion that plaintiff is attempting "to chill litigants from seeking relief to which they are entitled, [and] to deter counsel from representation in cases involving malicious and litigious parties."  Martin-Trigona, 737 F.2d at 1261.  As the Assistant Attorney General stated at the hearing: "[Plaintiff's lien filing is] particularly egregious since plaintiff herself commenced this federal action and is attempting to . . . prevent any steps being done in defense of the action by the defendants by asserting U.C.C. liens." (Tr. 8/29/06 at p. 12)  I concur in that assessment.  Having summoned defendants into federal court, plaintiff may not inhibit defendants' ability to defend themselves.

In this case, the <u>Saphir</u> factors counsel in favor of an injunction. Plaintiff's prosecution of this litigation has plainly involved harassment in the form of the filings and mailings.  I note that in addition to this activity, plaintiff filed another complaint against the same parties on the same causes of action in this district on September 11, 2006.  <u>See</u> <u>Bush v. Danziger</u>, No. 06-cv-6934(KMW) (S.D.N.Y. Sept. 11, 2006) (order of dismissal on the grounds that complaint raises no new allegations).  Her lien filings have been undertaken in bad faith, have resulted in needless litigation costs and distress by the parties and their lawyers, and have wasted judicial resources. Moreover, these liens, once filed with the Department of State, may only be terminated by additional filings with the Department, and cannot be rescinded or purged from the public record.  (Connell Decl. ¶ 6)  Therefore, relief other than an injunction would be inadequate to address plaintiff's behavior.

Plaintiff's actions support the finding of "[a] history of litigation entailing vexation, harassment and needless expense to other parties, and an unnecessary burden on the courts and their supporting personnel."  <u>Martin-Trigona</u>, 737 F.2d at 1262.  She received the requisite notice and hearing.  An injunction targeted to deprive plaintiff of her preferred method of harassment is therefore in order.

<u>Conclusion</u>

Plaintiff's complaint is dismissed.  An injunction will issue in a separate order, annexed hereto as Appendix A.

SO ORDERED.

Dated: New York, New York
        October 23, 2006

P. Kevin Castel
United States District Judge

## APPENDIX A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ――――――――――――――――――――――― x | | |
| | : | |
| TONIA BUSH, | : | |
| | : | |
| Plaintiff, | : | 06 Civ. 5529 (PKC) |
| | : | |
| -against- | : | |
| | : | INJUCTION AND |
| MITCHELL J. DANZIGER, AURORA DE PENA, | : | ORDER PROHIBITING |
| "John Doe", NEW YORK CITY HOUSING | : | CERTAIN ACTIONS |
| AUTHORITY, MONIQUE NAZARIO, | : | AND DECLARING |
| RITA RIZZO, HOWARD FRITZ, "John Doe", | : | CERTAIN FILINGS TO |
| KRAUSE MANAGEMENT INC., JOHN | : | BE NULL AND VOID |
| VILLANUEVA, "John Doe", MUDANZA a/k/a | : | |
| "John Doe", MIDTOWN MOVING & STORAGE, | : | |
| INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| ――――――――――――――――――――――― x | | |

This Order is entered under the authority of the All Writs Act, 28 U.S.C. §

1651(a), and the inherent powers of the Court and for the reasons set forth in a

Memorandum and Order of October 23, 2006.

From the date hereof until December 31, 2010, plaintiff TONIA BUSH,

her agents, employees, and any others acting in concert or participating with her, are

HEREBY ENJOINED, BARRED AND PROHIBITED from doing any of the following

acts, unless she first applies in writing for permission from the undersigned (or his

successor) in accordance with paragraph 6 hereof and said permission is granted in an

Order signed by the undersigned (or his successor) and filed with the Clerk of the Court:

1.   Transmitting or filing any document which purports to create a lien
or record of any debt, including, but not limited to, any financing
statement, UCC-1, security agreement, finance agreement or
document permitted to be filed under any provision of Title 19 of
N.Y.C.R.R., against (a) Mitchell J. Danziger, Aurora De
Pena, "John Doe", New York City Housing Authority, Monique
Nazario, Rita Rizzo, Howard Fritz, "John Doe", Kraus (or
"Krause") Management Inc., John Villanueva, "John Doe",
Mudanza A/K/A"John Doe", Midtown Moving & Storage, Inc.
(collectively, the "Defendants") or their officers, directors,
employees, agents or attorneys, or (b) any employees, agents or
attorneys of the State of New York or its subdivisions, including
but not limited to, any judge, clerk, court reporter, employee or
agent of any Court or of the New York State Attorney General, or
(c) any judge, clerk, court reporter, employee or agent of any Court
of the United States of America, including but not limited to, the
United States District Court for the Southern District of New York,
United States Court of Appeals for the Second Circuit or United
States Supreme Court,  or any person acting pursuant to an order of
any such Court;

2.   Interfering with the property or assets, whether real or personal, of
any person or entity covered by the terms of  paragraph 1 hereof,

including, but not limited to, by means of any communication
asserting that such person or entity is indebted to plaintiff;

3. The filings dated June 20, 2006 and September 22, 2006 of Tonia
Annette Bush with the New York Secretary of State naming
Mitchell Joel Danziger, Aurora De Pena, John Villanueva and
Willie Tomlin as debtors are deemed null and void ab initio. Any
lien or record of any debt filed in violation of this Order or the
Orders dated August 16, 2006, August 29, 2006, and/or September
21, 2006 is null and void ab initio. The Order of September 21,
2006 remains in full force and effect;

4. The premotion conference requirement is waived for any person
who seeks to modify or enforce any provision of this Order;

5. Any application for permission to do an act prohibited by this
Order shall be filed with the Clerk of this Court and reference the
caption of this action. It shall be accompanied by a copy of this
Order, and an affidavit (or sworn declaration under 28 U.S.C. §
1746) describing the actions sought to be taken and annex all
documents or drafts of documents; and

6. Plaintiff Tonia Bush is advised that any violation of this Order is
punishable as contempt of Court and may result in fines and/or
imprisonment.

SO ORDERED.


Dated: New York, New York
      October 23, 2006


_____

P. Kevin Castel
United States District Judge
